**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MALIA ANN B.,

                             Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.

No. 5:21-CV-1362
(AMN/CFH)

_____

**APPEARANCES:**

Olinsky Law Group
250 South Clinton Street – Suite 210
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**OF COUNSEL:**

HOWARD D. OLINSKY, ESQ.

NATASHA OELTJEN, ESQ.

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Malia Ann B.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for supplemental security income benefits.  See

---

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in accordance with General Order 18 and Local Rule 72.3(d).  See Dkt. Nos. 4, 6.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

Dkt. No. 1 ("Compl."). Plaintiff moves for reversal of the Commissioner's decision and remand for further proceedings. See Dkt. No. 10  The Commissioner moves for judgment on the pleadings. See Dkt. No. 14. For the following reasons, it is recommended that plaintiff's motion be granted, the Commissioners' motion be denied, and the Commissioner's decision be reversed and remanded for further proceedings.

## I. Background

On February 6, 2020, plaintiff filed a Title XVI application for supplemental security income benefits. See T. at 215-23.[3]  Plaintiff alleged a disability onset date of April 5, 2017. See id. at 215. The Social Security Administration ("SSA") initially denied plaintiff's claim on July 28, 2020. See id. at 102. Plaintiff moved for reconsideration, and her claim was again denied on November 30, 2020. See id. at 109, 112. Plaintiff requested a hearing, see id. at 120, and a hearing was held before Administrative Law Judge ("ALJ") Jeremy G. Eldred on April 2, 2021. See id. at 46-66. The ALJ issued an unfavorable decision on April 20, 2021. See id. at 13-24. The Appeals Council denied plaintiff's request for review on October 18, 2021. See id. at 1-3. Plaintiff timely commenced this action on December 21, 2021. See Compl.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 9. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks, citation, and emphasis omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

4

> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has
> an impairment which is listed in Appendix 1 of the
> regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him [or her] disabled without
> considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a
> claimant who is afflicted with a "listed" impairment is unable
> to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity
> to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-

disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas,

540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each

of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998)

(citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  Id. (citing Berry, 675 F.2d at 467).


### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined

that plaintiff had "not engaged in substantial gainful activity since February 6, 2020, the

application date[.]"  T. at 15.  At step two, the ALJ found that plaintiff had the following

severe impairments: "cervicalgia, migraine headaches, psoriasis, fibromyalgia, Crohn's

disease, major depressive disorder, anxiety disorder, panic disorder, and post-traumatic

stress disorder (PTSD)[.]"  Id.  At step three, the ALJ determined that plaintiff did not

have an impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

See id.  Before reaching step four, the ALJ concluded that plaintiff retained the residual

functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b), except she can
> kneel or crouch no more than occasionally; can understand, remember,
> and carry out only simple and routine tasks; can concentrate, persist, and
> maintain pace in a work setting to the extent necessary to perform only
> simple and routine tasks; can interact no more than occasionally with
> supervisors or co-workers; is unable to do a job that requires interaction
> with the public; and can appropriately adapt to ordinary changes in an
> unskilled occupation that involves only simple and routine tasks.

Id. at 18.  At step four, the ALJ determined that plaintiff was unable to perform relevant

past work.  See id. at 22.  At step five, "[c]onsidering [plaintiff's] age, education, work

experience, and residual functional capacity," the ALJ determined that there were "jobs

that exist in significant numbers in the national economy that [plaintiff] can perform[.]"

Id.  Thus, the ALJ determined that plaintiff "ha[d] not been under a disability as defined

in the Social Security Act, since February 6, 2020, the date the application was filed[.]"

Id. at 23.

## IV. Discussion[4]

Plaintiff argues that the ALJ erred in analyzing the medical opinion from consultative examiner, John Laurence Miller, Ph.D.  See Dkt. No. 10 at 10-16.  Plaintiff contends that the ALJ did not sufficiently articulate consideration of the supportability and consistency of the medical opinion as required by 20 C.F.R. § 404.1520c.  See id. at 13-16.  The Commissioner argues that the ALJ appropriately considered Dr. Miller's opinion and that the RFC determination is supported by substantial evidence.  See Dkt. No. 14 at 5-17.

### A.  Dr. Miller's Consultative Examination

Dr. Miller conducted plaintiff's psychiatric consultative evaluation on May 23, 2020.  See T. at 475.  Plaintiff informed Dr. Miller that she was unable to work because of her physical impairments and social anxiety.  See id.  Plaintiff explained that she woke up four-to-six times a night because of nightmares; her depression caused fatigue, loss of energy, excessive crying, hopelessness, and social withdrawal; her anxiety caused excessive worry, difficulty concentrating, avoidance of social settings, irritability, and fear of being judged; and her trauma caused flashbacks, nightmares, intrusive thoughts, hypervigilance, and detachment.  See id. at 476.  Plaintiff also reported that she had panic attacks four times a week and she had short term memory problems.  See id.  Plaintiff would "forget recent events and [] forget dates for appointments."  Id.

During the examination, plaintiff was cooperative, her social skills were adequate, and she was appropriately dressed and groomed.  See T. at 476.  She was restless and

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

fidgety, but her speech was fluent and clear, and her thoughts processes were coherent and goal oriented.  See id. at 477.  Plaintiff had a dysphoric affect and dysthymic mood.  See id.  Her sensorium was clear, and she had intact orientation.  See id.  Plaintiff's attention and concentration were "[i]mpaired due to emotional distress secondary to depression.  She declined to attempt the serial 7s task.  Serial 3s completed to 14."  Id.  Her recent and remote memory skills were also "[i]mpaired due to emotional distress secondary to depression.  2 out of 3 objects recalled immediately.  0 out of 3 objects recalled after delay.  Digits forward 7.  Digits backwards 4."  Id.  Plaintiff's intellectual functioning was average, and she had good insight and judgment.  See id.

Dr. Miller concluded that "[t]he results of the mental status evaluation are consistent with the spirit of [plaintiff's] vocational/educational history, if not the letter.  It appears that post-traumatic stress disorder and not just social anxiety has interfered with her ability to find and maintain employment."  T. at 477.  Dr. Miller reiterated plaintiff's "[d]aily [f]unctioning" as being able to dress, bathe, groom herself, cook, clean, and do laundry.  See id. at 478.  Dr. Miller noted that plaintiff's "husband does the shopping and money management.  She occasionally drives.  She takes public transportation on her own."  Id.  As for socialization, plaintiff "has no friends.  She usually gets along well with her family."  Id.  Plaintiff did not report any hobbies and her daily activities included watching television and listening to the radio.  See id.

Dr. Miller opined that plaintiff had no limitations in her ability to use reason and judgment to make work-related decisions, maintain appropriate hygiene, be aware of normal hazards, and take appropriate precautions.  See T. at 478.  Plaintiff was mildly limited in her ability to understand, remember, and apply simple directions and

instructions.  See id.  She was moderately limited in her ability to understand,

remember, or apply complex directions or instructions; interact appropriately with

supervisors and the public; and sustain an ordinary routine and regular attendance at

work.  See id.  Finally, Dr. Miller concluded that plaintiff was markedly limited in her

ability to sustain concentration, perform a task at a consistent pace, regulate her

motions, control her behavior, and maintain her well-being.  See id.

### B.  The ALJ's Review of Dr. Miller's Opinion

The ALJ concluded that "[t]he medical source statement from consultative

examining psychologist John Laurence Miller, Ph.D. is unpersuasive."  T. at 21.  The

ALJ explained that "[t]he marked mental limitations described by Dr. Miller are

not supported by his own mental status examination findings or the information he

provided regarding [plaintiff's] activities of daily living."  Id.  The ALJ reiterated and relied

on Dr. Miller's examination findings that plaintiff dressed appropriately, was cooperative,

had normal speech and thought processes, had good judgment and insight, and had an

average level of intellectual functioning.  See id.  The ALJ also noted that plaintiff "told

Dr. Miller that she remained capable of daily activities including attending to her

personal care, cooking, cleaning, doing laundry, driving a motor vehicle, and shopping."

Id.  The ALJ then stated that Dr. Miller's opinion was "inconsistent with the relatively

benign mental status examination findings shown in the medical evidence from

[plaintiff's] own treatment providers[.]"  Id. (citing T. at 577-79, 585-87, 677).

### C.  Analysis

Under the regulations applicable to claims filed on or after March 27, 2017—as in

this case—the ALJ "will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s)," but will consider certain factors to "evaluate the persuasiveness of medical opinions and prior administrative medical findings[.]" 20 C.F.R. § 416.920c(a). The "most important factors" to be considered are supportability and consistency. Id. § 416.920c(a), (b)(2). The supportability factor assesses a medical opinion compared to "the objective medical evidence and supporting explanations presented by a medical source[.]" Id. § 416.920c(c)(1). The consistency factor compares a medical opinion to "the evidence from other medical sources and nonmedical sources in the claim[.]" Id. § 416.920c(c)(2). An ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." Id. § 416.920c(b)(2). An ALJ is not required to articulate consideration of the remaining factors—relationship with the claimant, specialization, and "other factors"—unless the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record[.]" Id. § 416.920c(b)(3).

As the Commissioner states, "it is not the Court's function to reweigh the evidence that was before the ALJ." Mary M. v. Comm'r of Soc. Sec., No. 8:20-CV-1594 (TWD), 2022 WL 823850, at *11 (N.D.N.Y. Mar. 17, 2022) (citing Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993)); see also Dkt. No. 14 at 12, 17. However, the ALJ is required to explain his reasoning to a sufficient degree such that the Court can, at the very least, glean his rationale in making the RFC determination. See Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting Mongeur, 722 F.2d at 1040) ("An

ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision[.]'").

Plaintiff asserts that the ALJ erred in concluding that Dr. Miller's opinion was not supported by his examination of plaintiff because Dr. Miller's exam "was not normal." Dkt. No. 10 at 14; see also T. at 21. The Commissioner asserts that "the ALJ amply explained why he concluded" that Dr. Miller's examination did not support his opinion because the ALJ stated his reliance on Dr. Miller's "findings, which included cooperative behavior, normal speech and thought processes, good insight and judgment, and average intellectual functioning." Dkt. No. 14 at 12-13 (citations omitted).

The undersigned disagrees with the Commissioner's assertion that the ALJ "amply explained" his reasoning. Dkt. No. 14 at 13. In determining that Dr. Miller's opined marked limitations were not supported by Dr. Miller's examination, the ALJ only reiterated Dr. Miller's normal examination findings—that plaintiff was cooperative, made appropriate eye contact, had normal thought processes, had good insight and judgment, and had average intellectual functioning. T. at 21, 476-77. The ALJ did not acknowledge Dr. Miller's findings that were positive for mental health problems, including plaintiff's dysphoric affect, dysthymic mood, impaired attention and concentration, and impaired recent and remote memory skills. See id. at 21, 477. The categories that Dr. Miller found problems in—plaintiff's emotions, concentration, attention, and memory—directly correlate to the categories that he opined marked limitations—plaintiff's concentration, performance pace, and emotions. See id. at 477-78. Simialrly, it appears that the normal findings that the ALJ relied on—plaintiff's good insight and judgment, cooperation, normal thought processes, and average intellectual

functioning—correlate to Dr. Miller's conclusions that plaintiff had no limitations, or only mild or moderate limitations in those corresponding areas of understanding simple or complex instructions, interacting with others, sustaining a routine, using reason and judgment, and maintaining appropriate hygiene.  See id. at 476-78.

The ALJ did not explain why Dr. Miller's positive mental health findings did not support his marked limitations and the ALJ's rationale is not otherwise apparent as the findings seemingly directly correlate to the opined limitations.  See T. at 21.  At step three, in determining whether plaintiff's impairments met or equaled a Listing, the ALJ acknowledged that Dr. Miller found plaintiff's memory, attention, and concentration to be impaired and her mood to be dysthymic. See T. at 17; see also Berry, 675 F.2d at 469 ("[I]n spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence."). The ALJ then noted, "[h]owever," that Dr. Miller observed normal findings such as appropriate cooperation, hygiene, and eye contact; intact thought processes and clear sensorium; and average intellectual functioning.  T. at 17.  Although the ALJ acknowledged the less than normal examination findings at step three, the ALJ did not explain at step three or four, why Dr. Miller's findings do not support his conclusions where he determined that the areas that plaintiff struggled with on examination were the categories that she was more severely limited.  See id. at 17, 21.  To the extent there are contrary medical opinions in the record—the state agency medical consultants' opinions—the consultants' relied almost exclusively on Dr. Miller's opinion and did not

explain their decision to disagree with Dr. Miller's conclusions.  <u>See</u> T. at 77, 97; <u>see also</u> <u>infra</u> at 19-22.

Plaintiff relies on, and the Commissioner attempts to distinguish, <u>Mikrazi v. Colvin</u>, No. 15-CV-698, 2016 WL 5110035, at *8 (W.D.N.Y. Sept. 21, 2016).  <u>See</u> Dkt. No. 10 at 14; <u>see also</u> Dkt. No. 14 at 13.  In <u>Mikrazi</u>, the ALJ "placed significant weight" on the consultative examiner's opinion which opined that the plaintiff "could, among other things, maintain attention and concentration, maintain a regular schedule, learn new tasks, and appropriately deal with stress within normal limits." <u>Mikrazi</u>, 2016 WL 5110035, at *8.  The court determined that the ALJ's reliance on the opinion did "not establish substantial evidence to support his residual functional capacity assessment[]" because the medical opinion was internally inconsistent as the examiner noted that the "plaintiff's affect was dysphoric, her mood was dysthymic, her ability to concentrate was mildly impaired, and her recent and remote memory were impaired" but the examiner found no limitations in those same categories.  <u>Id.</u>

As in <u>Mikrazi</u>, here, the ALJ's consideration of the consultative examination does not provide substantial evidence in support of his RFC determination.  However, it is not because the ALJ gave too much weight to the consultative examiner's internally inconsistent opinion, but because the ALJ failed to explain his rejection of the consultative examiner's seemingly consistent opinion.  <u>See Mikrazi</u>, 2016 WL 5110035, at *8; <u>see also</u> T. at 21, 476-78.  As such, the ALJ's conclusion concerning the supportability factor is not supported by substantial evidence.  <u>See</u> 20 C.F.R. § 404.1520c(c)(1).  This error, in conjunction with other errors discussed below, supports remanding the ALJ's decision.  <u>See Seifried ex rel. A.A.B. v. Comm'r of Soc. Sec.</u>, No.

6:13-CV-0347 (LEK/TWD), 2014 WL 4828191, at *7 (N.D.N.Y. Sept. 29, 2014) (citation omitted) (remanding the ALJ's decision because "[w]hile [the examiner] designated [the plaintiff] 'of average intelligence,' his summary concluded that she needs additional help in almost all areas, and that there is a possibility she may at some point need special education. The only portions of this report to which the ALJ referred were those which supported a finding of not disabled."); cf. McCall v. Colvin, No. 15-CV-6383 (EAW), 2017 WL 631352, at *14 (W.D.N.Y. Feb. 16, 2017) ("The ALJ's explanation for rejecting the limitations assessed by [the consultative psychiatric examiner] relating to [the plaintiff's] ability to interact with others and to deal with stress limitations, while adopting the remainder of [the consultative psychiatric examiner's] opinion, was wholly conclusory. The ALJ reasoned that the limitations were 'not internally consistent with the other findings in the examination' and were not 'supported by the treatment record and other opinions noted in this decision,' although he failed to identify, let alone explain, the internal inconsistencies or the inconsistencies with the record.").

Next, plaintiff contends that the ALJ erred in concluding that Dr. Miller's opinion was "inconsistent with the relatively benign mental status examination findings shown in the medical evidence from the claimant's own treatment providers[.]" T. at 21; see also Dkt. No. 10 at 14. Plaintiff argues that the treatment records that the ALJ relied on were not "normal" and that there is "significant medical evidence that was consistent with Dr. Miller's findings." Dkt. No. 10 at 15.

The ALJ cited five record pages to support his contention that plaintiff had "relatively benign mental status examination findings[.]" T. at 21 (citing T. at 577-59, 585-87, 677). In each of the cited examinations, the objective findings indicate that

14

plaintiff was cooperative, she had good insight and judgment, she had organized thinking, she was attentive, and her recent and remote memory were intact.  See id. at 578, 586, 677.  However, during the sessions, plaintiff reported that she had "not been feeling well[]"; she was feeling "physically and emotionally exhausted"; she had "worsening of nightmares"; she was having "periods of tearfulness, emptiness, [and] anxiety[]"; she was experiencing "daytime fatigue[]"; "[s]he appeared tired throughout session"; she stated that she did not feel good; "[s]he complain[ed] of exhaustion [] and report[ed] worsening sleep[]"; she was having a low mood and felt exhausted; she was anxious; and her mood was "tired".  Id. at 577-78, 586.

Plaintiff identifies additional evidence indicating that she was diagnosed with anxiety; she reported symptoms consistent with anxiety and depression; and she had anxiety, trouble sleeping, and nervousness.  Dkt. No. 10 at 15 (citing T. at 316, 329).  Plaintiff also explains that her treating provider, Nurse Practitioner Tania Marschall, noted similar findings and opined similar conclusions as Dr. Miller, including that plaintiff had marked difficulty with focus and concentration because she would need redirection during sessions and had poor memory with difficulty recalling events.  Dkt. No. 10 at 15 (citing T. at 681-82).

Importantly, the ALJ did not state that plaintiff's examinations were entirely normal but "relatively benign[.]"  T. at 21.  Further, as the Commissioner states, the ALJ acknowledged plaintiff's low mood elsewhere in his decision, evidence of diagnoses do not automatically equate to severe limitations, and the ALJ discussed and rejected NP Marschall's opinion.  See Dkt. No. 14 at 13-15; see also T. at 17, 20-22; Tammie S. v. Berryhill, No. 3:18-CV-174 (CFH), 2019 WL 859263, at *9 (N.D.N.Y. Feb. 22, 2019)

(citation omitted) ("'Severity' is determined by the limitations imposed by an impairment, and not merely its by diagnosis.  The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe.").  Plaintiff does not challenge the ALJ's consideration of NP Marschall's opinion.  See Dkt. No. 14 at 15; see generally Dkt. No. 10.

However, in reviewing a medical opinion, an ALJ is obligated to discuss an opinion's "consistency" which looks to "the evidence from other medical sources and nonmedical sources in the claim[.]"  20 C.F.R. § 404.1520c(c)(2).  Unlike the supportability factor, which looks to "the objective medical evidence[,]" the consistency factor does not require the evidence to be objective.  Id. § 404.1520c(c)(1)-(2) (emphasis added).  The ALJ did not explain why the records that reflected plaintiff's recurring low mood, exhaustion, trouble sleeping, and nightmares were inconsistent with marked limitations in concentration, regulating emotions, or maintaining well-being. See T. at 21.  The ALJ also did not acknowledge or discuss the consistency between NP Marschall's opinion and Dr. Miller's opinion, which both opined similar marked limitations.  See id. at 20-22.

Solely because two opinions may be consistent with each other, does not mean they are consistent with the record as a whole, and the ALJ is not required to accept their opined limitations.  See Joseph W. v. Comm'r of Soc. Sec., No. 6:20-CV-06859 (EAW), 2022 WL 4462236, at *5 (W.D.N.Y. Sept. 26, 2022) (citing Frederick C. v. Comm'r of Soc. Sec., No. 1:19-CV-1078 (CFH), 2021 WL 466813, at *14 (N.D.N.Y. Feb. 9, 2021) ("[T]he ALJ is not required to mention or discuss every single piece of evidence in the record.")) (applying the treating physician rule and explaining that "[t]he fact that

the ALJ did not specifically discuss the consistency between LMSW Fana's opinion and that of consultative examiner Yu-Ling Lin, Ph.D., does not require remand.  The ALJ discussed both opinions and explained the weight given to each and was not required to expressly discuss their consistency or reconcile them with respect to each other."). However, the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions.  See Tammy J. v. Comm'r of Soc. Sec., No. 1:21-CV-00107 (GRJ), 2022 WL 3714668, at *5 (S.D.N.Y. Aug. 29, 2022) (citing Shawn H. v. Comm'r of Soc. Sec., No. 2:19-CV-113, 2020 WL 3969879, at *7 (D. Vt. July 14, 2020) ("[T]he ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other.")) ("The ALJ gave no indication that he accounted for the significant correspondence and consistency among the treating and examining source opinions."); Rachel J. v. Comm'r of Soc. Sec., No. 1:20-CV-1091 (DB), 2022 WL 205691, at *6 (W.D.N.Y. Jan. 24, 2022) (citations omitted) ("Dr. Nightingale's opinion was consistent with Dr. Castro's more restrictive lifting limits, but the ALJ did not discuss this consistency, and did not mention any of the opinions from Sherban Orthopaedics regarding [the p]laintiff's functional limitations.  Court(s) have found error where the ALJ failed to consider separate treating opinions and consistency with each other and record as a whole."); Peterson v. Kijakazi, No. 3:22-CV-00026 (VLB), 2023 WL 334379, at *10, n.14 (D. Conn. Jan. 20, 2023) (noting that "the ALJ also failed when explaining how he considered the important factor of consistency in regards to the opinions of Dr. Ringel and Dr. Fette, as there is no indication in the ALJ's explanation that he accounted for the identical consistency between the two medical consultants' standing and walking findings.").

The Commissioner contends that the ALJ's decision is supported by substantial evidence because the ALJ relied, in part, on the prior administrative medical findings from M. D'Ortona, Psy.D., and L. Haus, Psy.D.  See Dkt. No. 14 at 6; see also T. at 21. There are two concerns with the ALJ's reliance on the opinions from the non-examining state agency consultants.  First, the ALJ rejected the opinions of the only two individuals who examined plaintiff, one of whom had a treating relationship with plaintiff, while adopting the opinions of the two individuals who never examined plaintiff.  See T. at 21-22.  Although the regulations do not always require the ALJ to articulate consideration of the relationship with the claimant factor, it is still a relevant consideration.  See 20 C.F.R. § 416.920c(b)(3), (c)(3); see also Javon W. v. Comm'r of Soc. Sec., No. 6:20-CV-06730 (EAW), 2022 WL 4363786, at *8 (W.D.N.Y. Sept. 21, 2022) ("[T]he ALJ's decision to give greater weight to a non-examining provider, particularly where mental health limitations are at issue, while discrediting the only examining provider is troubling. While neither Dr. Brownfeld nor Dr. Austin-Small were treating physicians, Dr. Brownfeld at least conducted an in-person examination and observed [the p]laintiff first-hand."); Amber H. v. Saul, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *8 (N.D.N.Y. May 24, 2021) (citing Shawn H. v. Comm'r of Soc. Sec., No. 2:19-CV-113, 2020 WL 3969879, at * 6 (D. Vt. July 14, 2020) ("Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'"); (quoting Dany Z. v. Saul, No. 2:19-CV-217, 2021 WL 1232641, at *12 (D. Vt. Mar. 31, 2021) ("[T]he new

18

regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner.")).

Second, to the extent Drs. D'Ortona and Haus did not examine plaintiff and only reviewed plaintiff's records, they did not review NP Marschall's opinion, and they relied almost entirely on Dr. Miller's consultative examination but came to different conclusions. See T. at 77, 97. Dr. Miller opined that plaintiff had marked limitations in sustaining concentration, performing a task at a consistent pace, regulating her emotions, controlling her behavior, and maintaining her wellbeing. See id. at 478. In making the initial disability determination, Dr. D'Ortona determined that plaintiff was moderately limited in her ability to maintain attention and concentration and complete a normal workday or workweek without interruptions from her psychologically based symptoms. See id. at 72, 76. In explaining this determination, Dr. D'Ortona cited only Dr. Miller's opinion. See id. at 77. Similarly, in making the reconsideration disability determination, Dr. Haus determined that plaintiff had mild to moderate limitations. See id. at 88, 94-95. In making that determination, Dr. Haus cited Dr. Miller's examination findings and a single October 2020 treatment note in which plaintiff had a normal examination aside from recurring nightmares. See id. at 97. Neither Dr. D'Ortona nor Dr. Haus explained why they rejected Dr. Miller's marked limitations, despite relying on that opinion. See id. at 77, 97.

The ALJ is not required to accept any one medical opinion and it is his duty to resolve conflicts in the record. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of

19

the evidence available to make an RFC finding that was consistent with the record as a whole."); Kikta v. Comm'r of Soc. Sec., No. 5:15-CV-60 (DNH/ATB), 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) (citing Pellam v. Astrue, 508 F. App'x 87, 89 (2d Cir. 2013) (summary order) ("There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations[.]")), report and recommendation adopted, 2016 WL 865301 (N.D.N.Y. Mar. 2, 2016); Cruz v. Colvin, 3:13-CV-723 (MAD/TWD), 2014 WL 4826684, *14 (N.D.N.Y. Sept. 29, 2014) (determining that the ALJ could credit portions of an opinion, while declining to credit the conclusions that were not supported by the consultative examiner's examination findings and which were inconsistent with other evidence of record)).

Here, the ALJ did not discuss or resolve the conflict between Dr. Miller's marked limitations and the state agency consultants' mild and moderate limitations, despite the consultants relying almost exclusively on Dr. Miller's opinion. See T. at 77, 97. At step three of the ALJ's determination, the ALJ stated that Drs. Haus and D'Ortona "reviewed the record[.]" Id. at 18. However, neither provided reviewed NP Marschall's medical opinion because it was completed after their determinations. See id. at 77, 97, 681. NP Marschall's opinion included more severe limitations than Drs. D'Ortona and Haus opined. See T. at 76-77, 94-97, 681-82. The ALJ did not reconcile these conflicts or discuss whether the consultants' opinions may have changed had they reviewed NP Marschall's opinion. See id. at 21-22; see also John S. v. Kijakazi, No. 1:20-CV-1468 (GTS), 2022 WL 866548, at *8 (N.D.N.Y. Mar. 23, 2022) ("[T]he ALJ's reliance on the State medical agency consultants' opinions was not improper. . . . the ALJ found the State medical agency consultants' opinions persuasive, but also noted that 'the

additional medical evidence of record provided subsequent to their opinions support[ed] additional limitations'—a finding that adequately addressed the more-restrictive opinions of [the p]laintiff's treating physicians, as well as medical evidence obtained after Drs. Stradley and Nimmagadda provided their opinions."); Hansen-Nilsen v. Comm'r of Soc. Sec., No. 5:15-CV-1258 (GTS/WBC), 2017 WL 913933, at *6 (N.D.N.Y. Feb. 7, 2017) ("The ALJ did not commit error in relying on an opinion from a source who did not review the entire record because [the p]laintiff failed to provide evidence from the record which would contradict the opinion."), report and recommendation adopted, 2017 WL 913639 (N.D.N.Y. Mar. 6, 2017).

"The Second Circuit has [] held that the opinion of a non-examining State agency medical consultant may outweigh the opinion of a treating source." Gardenier v. Comm'r of Soc. Sec., No. 5:16-CV-0073 (WBC), 2017 WL 2389680, at *5 (N.D.N.Y. June 1, 2017) (citing Camille v. Colvin, 652 F. App'x. 25, 28 (2d Cir. 2016) (summary order) ("[T]he regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.")); see also Tana S. v. Berryhill, No. 1:17-CV-0414 (CFH), 2018 WL 4011560, at *8 (N.D.N.Y. Aug. 22, 2018) (citation omitted) (finding "that it was reasonable and within the ALJ's purview to afford more weight to a non-examining opinion than an examining opinion, especially where he found the examining opinion to be inconsistent with the evidence of record.").

The Western District of New York has remanded an ALJ's decision because the ALJ gave "[g]reat weight" to the non-examining state agency psychological consultant's opinion, which relied "almost exclusively on" the consultative examiner's opinion.

Lohmann v. Colvin, No. 12-CV-964S, 2014 WL 1686822, *3 (W.D.N.Y. Apr. 29, 2014). The ALJ gave the consultative examiner's opinion "little weight[.]"  Id.  The court explained that "[i]t cannot therefore be concluded that substantial evidence supports the ALJ's determination" because the state agency consultant relied on "the very examination conducted by the consultative psychologist that the ALJ found insufficient." Id. This Court has distinguished Lohmann, and affirmed an ALJ's decision where the state agency consultant "did not rely exclusively upon Dr. Shapiro[,the psychological consultant's,] opinion but rather relied upon a combination of Dr. Shapiro's findings, [another doctor's] findings, [the p]laintiff's medical records, and [the p]laintiff's reported daily activities." Sarah C. v. Comm'r of Soc. Sec., No. 5:19-CV-1431 (FJS), 2021 WL 1175072, at *17 (N.D.N.Y. Mar. 29, 2021).  Further, "the ALJ explicitly gave Dr. Shapiro's opinion 'partial weight,' which can hardly be compared to the ALJ finding Dr. Shapiro's opinion insufficient or rejecting it."  Id.  Similarly, this Court has found no error where the state agency consultant "cited MRI evidence and a treatment note . . ., along with [the consultative examiner's] assessment and opinion, when explaining the basis for his opinion"[]; and "the ALJ fully considered the effect of [the] plaintiff's relevant physical impairments in formulating the RFC determination, and explicitly considered whether evidence received after [the consultant] rendered his opinion was or was not consistent with that opinion."  Candy A. O. v. Kijakazi, No. 5:20-CV-0766 (DEP), 2022 WL 226804, at *7 (N.D.N.Y. Jan. 26, 2022).

The case at hand is more akin to Lohmann because the ALJ determined that Dr Miller's opinion was unpersuasive and Drs. D'Ortona and Haus were persuasive.  See T. at 21.  However, Dr. D'Ortona relied solely on Dr. Miller's opinion, and the ALJ did not

explicitly consider whether NP Marschall's opinion, which was rendered after the consultative examiners' opinions, impacted their decisions.  See id. at 77, 97, 21-22, 478, 681-82; see also Elizabeth P. v. Comm'r of Soc. Sec., No. 3:20-CV-891 (CFH), 2022 WL 507367, at *6 (N.D.N.Y. Feb. 18, 2022) (citations omitted) (explaining that the state agency consultant "did not examine [the] plaintiff and primarily relied on [the consultative examiner's] examination, but as [the] plaintiff notes, they came to slightly different conclusions, creating inconsistencies that the ALJ did not reconcile. . . .  As Dr. Kamin reiterated Dr. Slowik's conclusions verbatim, the Court is unable to determine why Dr. Kamin found 'no evidence' of this limitation."); West v. Berryhill, No. 3:17-CV-1997 (MPS), 2019 WL 211138, at *5 (D. Conn. Jan. 16, 2019) ("[T]he ALJ may not credit a non-examining physician's opinion over that of a treating physician's where the non-examining physician's opinion considered less than the full record and the subsequent medical evidence may have altered the opinion.").  As (1) the state agency consultants relied almost entirely on Dr. Miller's opinion but failed to explain why they were deviating from the marked limitations, (2) the ALJ did not reconcile this inconsistency, and (3) the state agency consultants did not review NP Marschall's opinion which opined severe limitations that were consistent with Dr. Miller's opinion, the state agency consultants' opinions do not constitute substantial evidence in support of the ALJ's RFC determination.

Further, the ALJ relied on plaintiff's ability to "attend[] to her personal care, cook[], clean[], do[] laundry, driv[e] a motor vehicle, and shop[]" as a reason for finding Dr. Miller's opinion to be unpersuasive.  T. at 21.  The Commissioner asserts that the

ALJ's consideration of plaintiff's activities of daily living was a "proper consideration[.]" Dkt. No. 14 at 11.

First, the ALJ does not explain how plaintiff's ability to cook, clean, dress, and bathe contradicts Dr. Miller's marked limitation findings.  See T. at 21.  Dr. Miller concluded that plaintiff did not have limitations in being able to maintain her hygiene and appropriate attire.  See id. at 478.  The ALJ did not explain, and it is not evident how being able to attend to personal care, cook, clean, and do laundry contradict Dr. Miller's marked limitation in being able to concentrate, maintain pace, regulate emotions, control behavior, and maintain wellbeing for eight hours a day, five days a week.  See id. at 21; see also Christopher B. v. Comm'r of Soc. Sec., No. 1:21-CV-01238 (EAW), 2023 WL 110117, at *9-10 (W.D.N.Y. Jan. 5, 2023) ("Because the ALJ did not adequately explain how [the p]laintiff's reported activities of daily living"—including "playing video games for up to six hours a day, watching television, drawing, carrying groceries, helping his mother as much as he can, performing his own personal care, and caring for his pet snakes"—"contradict the opinions of his providers or would otherwise translate into an ability to perform employment, remand is similarly warranted on this basis.").  Second, Dr. Miller explicitly noted in her evaluation that plaintiff's "husband does the shopping and money management[]" and "[s]he occasionally drives."  T. at 478.  Plaintiff also noted in her Function Report that her children help with the laundry and her husband helps with the cooking.  See id. at 251-52.  The ALJ also failed to recognize the limitations in plaintiff's activities of daily living that are reflected in the record.

At step three, the ALJ described plaintiff's activities of daily living with a bit more specificity.  See T. at 17.  The ALJ noted that plaintiff only shops once a week and she

occasionally drives.  See id.  He also stated that plaintiff "care for three children[]" and determined that she was only mildly limited in adapting or management oneself because she "demonstrates a substantial ability to care for herself and others."  Id.  In her Function Report, plaintiff wrote that she "make[s her] kids easy meals[,]" her husband and siblings help her take care of her kids, and she used to run around with her kids and help them with their homework but she does not anymore.  Id. at 250.  She testified that her kids do the laundry for her; her husband goes shopping with her; if she has to go somewhere, her husband, brother, or mother has to be with her; she "can't even remember like what day it is or what happened yesterday or the day before that."  Id. at 55, 60.  Neither at step three or four, did the ALJ acknowledge that plaintiff required assistance to take of her children and to complete the chores or activities that the ALJ relied on.  See id. at 17, 21.

The Second Circuit recently determined that an ALJ's decision to discount a treating provider's medical opinion was not supported by substantial evidence where the ALJ relied, in part, on the plaintiff's activities of daily living.  See Colgan v. Kijakazi, 22 F.4th 353, 363 (2d Cir. 2022).  Specifically, the Court "disagree[d] with the ALJ that [the plaintiff's] ability to engage in certain activities of daily living—such as caring for her two children, preparing meals and washing dishes, and driving to her medical appointments—provided substantial record evidence to discount [a treating provider's] medical opinion."  Id..  This was because there was "some evidence that [the plaintiff], a single mother, could to some extent care for her two young children and engage in activities necessary to her own welfare[,] b]ut we cannot say that these make a treating physician's findings flawed and foreclose an applicant's entitlement to disability

benefits." Id.; see also Loucks v. Kijakazi, No. 21-1749, 2022 WL 2189293, at *2 (2d

Cir. June 17, 2022) (summary order) ("[A]lthough the ALJ noted that [the plaintiff]

reported engaging in some limited and sporadic part-time work and that she engaged in

some daily living activities such as reading and playing games on her phone, these

activities did not show that [the plaintiff] could hold down a steady job for an extended

period of time.").

        In a more recent unpublished decision, the Second Circuit clarified that "*Colgan*

did not establish a categorical rule prohibiting ALJs generally from considering a

claimant's daily activities in an RFC assessment." Snyder v. Comm'r of Soc. Sec., No.

22-277-CV, 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023) (summary order) (citing

Schillo v. Kijakazi, 31 F.4th 64, 77, n.4 (2d Cir. 2022) ("[The plaintiff's] testimony about

her daily activities—including her ability to do chores around her house, bathe, dress,

and use her cellphone—lends some support to the ALJ's findings that both Drs. Shukri's

and Picciano's opinions are inconsistent with the objective medical evidence. [The

plaintiff] did not testify that she persevered through tremors or pain when completing all

activities. For instance, she reported no difficulty with fine or gross hand or finger

manipulation when doing her laundry, cleaning her home, or doing the dishes.")).

        The undersigned agrees that an ALJ is entitled to consider a plaintiff's activities

of daily living; however, there must be a logical connection between the purported

activities and the ALJ's RFC discussion and determination. See Perozzi v. Berryhill,

287 F. Supp. 3d 471, 492 (S.D.N.Y. 2018) (citing, inter alia, Roma v. Astrue, 468 F.

App'x. 16, 19 (2d Cir. 2012) (summary order) (concluding that it was not error for an ALJ

to use the plaintiff's participation in a "broad range of light, non-stressful activities" as

evidence contradicting a treating provider's opinion that the plaintiff was "permanently disabled")) ("An ALJ has discretion to resolve conflicts in the record, including with reference to a claimant's reported activities of daily living, regardless of the severity of the claimant's limitations in activities of daily living.").  The ALJ also must not misstate the degree to which the plaintiff can perform the purported activities.  See Dezarea W. v. Comm'r of Soc. Sec., No. 6:21-CV-01138 (MAD/TWD), 2023 WL 1960528, at *11 (N.D.N.Y. Feb. 13, 2023) (remanding because "[t]he ALJ selectively cited portions of the record concerning [the p]laintiff's daily activities without mentioning important details" that indicated that the plaintiff's reported activities were more limited than the ALJ stated that they were); see also White v. Comm'r of Soc. Sec., No. 5:14-CV-1140 (GTS/WBC), 2016 WL 2865724, at *7 (N.D.N.Y. Apr. 21, 2016) (remanding where ALJ "mischaracterized [the p]laintiff's activities of daily living" in rejecting medical source statement as inconsistent with those activities), report and recommendation adopted, 2016 WL 2858859 (N.D.N.Y. May 16, 2016).

Here, the ALJ did not acknowledge certain caveats that are noted in the record to plaintiff's activities of daily living and did not explain why the activities contradict Dr. Miller's opined marked limitations.  See T. at 21.  As such, the ALJ's reliance on those activities does not provide substantial evidence in support of the RFC determination. See Lawrence W. v. Comm'r of Soc. Sec., No. 5:17-CV-0877 (TWD), 2018 WL 4509490, at *8 (N.D.N.Y. Sept. 18, 2018) (citations omitted) ("The ALJ noted [the p]laintiff testified he was able to prepare simple meals (such as a sandwich), attend to his personal care, travel independently and ride his bicycle every day, play video games, perform 'all chores' around the house, and engage in landscaping.  However,

the ALJ's decision does not explain how [the p]laintiff's ability to perform activities of daily living at his home 'translated to the ability to perform the mental demands of substantial gainful work in a typical competitive workplace environment.'"); Sharon R. v. Kijakazi, No. 3:20-CV-902 (ATB), 2021 WL 3884257, at *7 (N.D.N.Y. Aug. 31, 2021) (citations and footnote omitted) ("[The] plaintiff did more than manage her own household.  She cared for her mother until she passed away in 2017, and at the time of the ALJ's hearing, plaintiff was helping her disabled brother, who lived in the apartment below her.  In addition to taking care of her personal hygiene, plaintiff drove, did yard work, did housework for herself and her brother, paid bills, went grocery shopping, helped her brother cook meals, and took care of two cats. . . .  As stated by the ALJ, these activities are inconsistent with a 'marked' limitation in sustaining an 'ordinary routine.'"); see also Bey v. Comm'r of Soc. Sec., No. 21-CV-7832 (KHP), 2023 WL 1098183, at *9 (S.D.N.Y. Jan. 30, 2023) ("[T]he ability to perform activities such as cooking, cleaning, reading, watching television, and playing cell phone games does not amount to the ability to concentrate for an extended period, and is not inconsistent with a marked limitation in maintaining concentration, attention, and pace at work.").

In sum, the ALJ's determination that Dr. Miller's opinion is unpersuasive, and his subsequent RFC determination, are not supported by substantial evidence.  None of this is to say that the ALJ is obligated to accept Dr. Miller's marked limitations.  However, the ALJ must sufficiently explain his rejection of those limitations which appear supported by Dr. Miller's examination findings and consistent with NP Marschall's opinion.  Additionally, the state agency consultants' conclusions that are contrary to Dr. Miller's opinion despite relying on the opinion, should be further

28

discussed.  Thus, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings.[5]

## V.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

---

[5] The Commissioner states that "it is worth noting that Courts in the Second Circuit have held that an assessment of marked limitations in an area of mental functioning is not *per se* disabling."  Dkt. No. 14 at 16, n.5.  It appears that the Commissioner is alluding to an argument that any error in the ALJ's review of Dr. Miller's opinion is harmless because even if the ALJ adopted Dr. Miller's marked limitations, the RFC determination would not change.  See id.  The Commissioner cites Kya M. v. Comm'r of Soc. Sec., 506 F. Supp. 3d 159, 166 (W.D.N.Y. 2020) to support the contention that courts have determined that marked limitations can be accommodated by a limitation to simple, routine, and repetitive tasks—which is what the ALJ limited plaintiff to in this case.  See id.; see also T. at 18.  In Kya M., the court stated that "[c]ourts within the Second Circuit have repeatedly held that '[m]arked limitations in mental functioning, including a marked limitation in ability to deal with stress, do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements.'"  Kya M., 506 F. Supp. 3d at 166 (quoting Blocker v. Saul, No. 18-CV-6788F, 2020 WL 1047737, at *6 (W.D.N.Y. Mar. 4, 2020)).  The court explained that "an RFC limiting a claimant to simple, routine tasks addresses limitations in concentration, persistence, and pace."  Id.  However, in the cases that the Kya M. court cites, the plaintiffs had mild to moderate limitations in concentrating and persisting, not marked limitations.  See id. (citing Broadbent v. Saul, No. 3:18-CV-02127 (WIG), 2019 WL 4295328, at *5 (D. Conn. Sept. 11, 2019); Williams v. Colvin, 98 F. Supp. 3d 614, 633 (W.D.N.Y. 2015)).  Accordingly, Kya M., does not necessarily support the Commissioner's implied contention that the ALJ's RFC determination accommodated Dr. Miller's marked limitation findings.  See Dkt. No. 14 at 16, n.5; see also Worthy v. Berryhill, No. 3:15-CV-1762 (SRU), 2017 WL 1138128, at *8 (D. Conn. Mar. 27, 2017) (citations omitted) ("[S]edentary plaintiffs with 'marked' limitations on social functioning, concentration, and persistence have been found wholly unable to do even simple, low-skilled work.").  As it is not clear whether the ALJ's RFC determination would change were he to adopt Dr. Miller's opined marked limitations, the undersigned declines to conclude that the ALJ's errors are harmless.  See Gemmell v. Comm'r of Soc. Sec., No. 8:16-CV-1014 (CFH), 2017 WL 3328237, at *5 (N.D.N.Y. Aug. 2, 2017) (citing Cottrell v. Colvin, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error can be harmless where proper consideration of the physician's opinion would not change the outcome of the claim)); Micaela E. M. v. Comm'r of Soc. Sec., No. 5:21-CV-0907 (LEK/DEP), 2022 WL 18587761, at *6 (N.D.N.Y. Oct. 19, 2022) ("Although I agree with the Commissioner that it seems unlikely that opinion would have changed the ALJ's findings, such a finding is more appropriately to be made by the ALJ under the circumstances here, particularly given that the opinion expresses limitations stricter than those found by the ALJ[.]), report and recommendation adopted sub nom. Morandi v. Comm'r of Soc. Sec., 2023 WL 371017 (N.D.N.Y. Jan. 24, 2023).

**RECOMMENDED**, that the Commissioner's decision be **REVERSED and REMANDED for further proceedings**; and it is further

**RECOMMENDED**, that plaintiff's motion, Dkt. No. 10, be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's motion, Dkt. No. 14, be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.

Date:  February 23, 2023
       Albany, New York

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge